UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHACOA CHAPMAN, an infant by her g/a/l TAHEESHA CHAPMAN, and TAHEESHA CHAPMAN, individually,** | Civil Action No.: 02-2108 (JJH) |
| Plaintiffs, | |
| v. | OPINION AND JUDGMENT |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

**HUGHES, U.S.M.J.**

Having consented to the jurisdiction of the United States Magistrate Judge, this case was tried to the Court on January 16, 17 and 19, 2007. The Complaint was filed in May 2002, but after discovery began, the case was administratively terminated when the Plaintiff's father, serving in the military, was transferred overseas. After the family's return to the United States, discovery was completed, at which time the case was referred to Court Arbitration. After Arbitration proved unsuccessful, the case was again reopened, final preparations for trial were made, and the trial on liability issues commenced, the issues of liability and damages having been previously bifurcated for trial by the Court. After a motion by Defendants for Judgment as a Matter of Law at the conclusion of Plaintiff's case, the only remaining claim is one of negligent supervision.

Generally, Plaintiff asserts that the Defendants, Program Assistants for a Summer Camp at Fort Monmouth, were negligent in not seeing and stopping the Plaintiff from playing a game of tag on the jungle gym on the outside playground of the Camp. The Plaintiff, six years old at

the time and apparently trying to avoid the tag, jumped off the middle of a circular slide, thereby breaking her arm and causing serious injury. The Defendants, again generally, claim that they, and the Party in interest, the United States, were not negligent as they were abiding by generally accepted standard operating procedures at the time of the accident and, in any event, the Plaintiff's injury was caused by her act of jumping from the slide, not by anything the Defendants agents did or did not do.

## I.   EVIDENCE

At trial, the Court heard testimony from the Plaintiff Shacoa Chapman ("Shacoa") who testified as to the events in question, as well as her mother who testified to her responding to the scene. Also testifying to the events were the three Program Assistants, or Adult Supervisors, January Delonardo, Jamie Cullen, and Madiline Jackson, with Ms. Jackson's deposition being presented to the Court by question and answer by a paralegal. The Court also permitted, over the objection of Defense Counsel, an expert witness, Steve Bernheim, to offer opinion in the field of playground safety and child supervision. After conducting a preliminary inquiry[1] and based on his long experience evaluating playgrounds and instruction manuals for child supervision, the Court determined that Mr. Bernheim, for the purposes of this particular trial, had sufficient expertise so as to assist the trier-of-fact in arriving at a verdict. The Court also heard testimony, via videoconferencing, of Janey Frances Kipps (formerly Baca), Coordinator of Child & Youth Services who testified as to the development and importance of standard operating procedures and training modules. Finally, the Defense offered a single witness, Terry Stone, the immediate supervisor of the three Program Assistants, who testified principally about the playground

---

[1] See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

equipment and certain emails and accident reports describing the accident.

The Court has also considered exhibits that were admitted into evidence during the course of the trial. Plaintiffs offered the following:

- P-2: Standard Operating Procedure for Supervision of Children, signed by Janey K. Baca, Coordinator, Child & Youth Services.
- P-5: Accident Report, Fort Monmouth Child & Youth Services, dated June 30, 1999.
- P-6: Accident Report, Fort Monmouth Child & Youth Services, dated June 30, 1999, with update dated July 1, 1999.
- P-13: Report of Unusual Occurrence, dated June 30, 1999, signed by Terry P. Stone.
- P-14: Print of e-mail of June 30, 1999 from Terry Stone to Janey Baca.
- P-20: School Age Staff Training Program, Module 1, "Safe", marked PJD-1 on July 16, 2005.

Defendant offered the following exhibits: D-1 through D-13, photographs and enlarged photographs of the jungle gym from various angles and D-18, an aerial diagram of the jungle gym.

Finally, the parties had also stipulated to a number of facts that were contained in a document marked Court Exhibit 1.

## II. STIPULATED FACTS[2]

---

[2] The Court only incorporates those stipulated facts which were necessary to the verdict. The Stipulated Facts are listed in the same sequence and by the same letter designation as they were given to the Court by the parties.

     A.     The United States of America, through the Department of the Army, operated a child care program known as School Age Services on the premises of Fort Monmouth, New Jersey, providing child care services for the children of persons affiliated with the Department of the Army.

     B.     On June 30, 1999, Shacoa Chapman, the daughter of an active-duty member of the Army, was attending the summer child care program conducted by School Age Services.

     D.     On June 30, 1999, Shacoa Chapman sustained a personal injury while she was using playground equipment on an outdoor playground on the premises operated by School Age Services.

     E.     At the time that Shacoa Chapman sustained her injury, three employees of School Age Services were present at the outdoor playground area: January Delonardo, Jamie Cullen and Madiline Jackson.[3] None of these employees saw Shacoa Chapman's accident occur. All three employees first became aware that Shacoa Chapman has been involved in an accident and had sustained an injury when Shacoa approached them following the accident and so informed them.

     F.     The playground equipment on which Shacoa Chapman was playing at the time of her accident consisted of several different components which were connected in linear fashion such that the children could move through the length of the apparatus and access all of the components. For ease of reference, this playground equipment may hereafter be referred to as a "jungle gym."

     G.     At the far end of the "jungle gym" was a spiral slide.

---

[3] Staffing ratios, although included in the parties' stipulated facts, are not an issue in this case and therefore, are not included among the Stipulated Facts in this Opinion.

    H.    Shacoa Chapman sustained her injury when she hit the ground.

    L.    School Age Services had adopted a written Standard Operating Procedure for the Supervision of Children, signed by Janey K. Baca, Coordinator of Child & Youth Services.

    M.    The Standard Operating Procedure for the Supervision of Children was applicable to child care personnel working at School Age Services for the supervision of children "to ensure their safety and well-being."

    P.    Item (b)(5) of the Standard Operating Procedure, applicable to Program Directors/Assistant Program Directors, stated:

> "Ensure that all indoor and outdoor child activity spaces are visually and physically accessible to multiple adults for supervision purposes."

    Q.    Item (c)(1) of the Standard Operating Procedure, applicable to Program Leaders/Program Assistants, stated:

> "Maintain direct/visual supervision of children at all times, never leaving a child unattended indoors or outdoors whether asleep or awake."

    R.    Item (c)(5) of the Standard Operating Procedure, applicable to Program Leaders/Program Assistants, stated:

> "Supervise children stringently during outdoor play time since accidents are more apt to occur on outdoor play equipment. Adults must position themselves near playground equipment for close supervision, avoid socializing/gathering with other adults, and move around to ensure all children are in view."

**III.**    <u>**FINDINGS OF FACT BY THE COURT**</u>

    1.    Shacoa Chapman was being chased or pursued by another young child in a game

5

of "tag" on a jungle gym apparatus immediately prior to her accident.

2. The jungle gym had a number of connected components - e.g., a small straight slide, a suspended solid-bottom mobile bridge, a vertical tic-tac-toe panel, suspended rope webs, a spiral climber, ladders, and a spiral slide, with horizontal platforms at different heights.

3. The jungle gym equipment was situated essentially perpendicular to the building, with the small straight slide near the end of the jungle gym that lies closer to the building with the spiral slide at the other end of the jungle gym, further away from the building.

4. The total length of the jungle gym, from the end closest to the building to the furthest reach of the outer wall of the spiral slide at the other end, was approximately 50 feet.

5. The running/chasing/"tag" game being played by Shacoa Chapman and the other small child on the jungle gym apparatus had begun on the ground, continued on to the jungle gym, and traveled a good portion of the length of the jungle gym.

6. Given the physical configuration of the jungle gym and Shacoa Chapman's own description of the events preceding her injury, it would not necessarily have been apparent to an onlooker that a "running/chasing game" was occurring.

7. Shacoa climbed to the top of the circular slide, began down the slide, and then jumped from the slide to avoid being "tagged" by her pursuer.

8. At the time of Shacoa's accident, three civilian employees of School Age Services were present in the area of the wood-chip covered playground at different positions: January Delonardo, Jamie Cullen and Madiline Jackson.

9. None of the three employees of School Age Services who were present at the outdoor playground area at the time that Shacoa sustained her injury saw the accident occur.

10. January Delonardo was standing between the balance beam and a bench, supervising the children on the playground and watching children on the jungle gym, when Shacoa came towards her, saying, "I think I broke my arm."

11. Jamie Cullen was in the grass area right at the edge of the playground perimeter, facing the playground/equipment and watching the children play on the playground.

12. Madiline Jackson was standing by the smaller, straight slide on the jungle gym, on the side of the equipment that was closer to the building, when she heard January Delonardo calling her and saying that Shacoa was hurt. Ms. Delonardo was with Shacoa, by the big slide, on the opposite side of the jungle gym from Ms. Jackson.

13. All three employees of School Age Services who were present at the outdoor playground area at the time that Shacoa sustained her injury first became aware that Shacoa Chapman had been involved in an accident and had sustained injury when Shacoa approached them following the accident and so informed them.

14. In the Accident Report completed on the date of the accident by Jamie Cullen and signed by Terry Stone, Program Director, Jamie Cullen wrote that Shacoa Chapman "fell from the top of the slide."

15. In the "update" written onto the June 30, 1999 Accident Report on July 1, 1999 by Terry Stone, he wrote that "Shacoa admitted to her mother that she jumped off the slide while playing a chasing game with another child."

IV. **CONCLUSIONS OF LAW**[4]

---

[4] In view of the Court's decision herein, it need not reach the issues of comparative negligence on the part of Plaintiff or of damages.

1.	Plaintiffs' action seeks recovery against the United States of America for alleged negligent supervision of children on a playground operated by the United States.  This action is governed by the Federal Tort Claims Act ("FTCA"), and the Court has jurisdiction over the subject matter of this action under that Act.  28 U.S.C. §§ 1346(b), 2671 *et seq*.

2.	The Court has personal jurisdiction over the parties to this action.

3.	The FTCA permits recovery for injuries "caused by the negligent or wrongful act or omission of any employee of the Government."

4.	Under New Jersey law, negligence will not be presumed simply because someone has been harmed.  Rather, a plaintiff has the burden of proving by a preponderance of the credible evidence that negligence on the part of a defendant proximately caused injury before recovery from that defendant will be allowed.  Buckelew v. Grossbard, 87 N.J. 512, 525 (1981).

5.	In the present matter, the preponderance of the evidence standard requires Plaintiff to provide evidence showing that it is more likely than not that Defendant was negligent.  See Penn v. Wal-Mart Stores, Inc., 116 F. Supp. 2d 557, 564 (D.N.J. 2000).

6.	To prevail in a negligence action under New Jersey law, a plaintiff must establish:

    a.	that the defendant owed her a particular duty under the circumstances that gave rise to this action;

    b.	that the defendant somehow breached that duty; and

    c.	that the defendant's breach of duty proximately caused her to suffer some damage or harm.

Keith v. Truck Stops Corp. of America, 909 F.2d 743, 745 (3d Cir. 1990); Griesenbeck v. Walker, 199 N.J. Super. 132, 141 (App. Div.), cert. denied, 101 N.J. 264 (1985).

7.	"It is axiomatic that 'the mere showing of an accident causing injuries is not

8

sufficient to infer negligence,'" Fedorczyk v. Caribbean Cruise, Ltd., 82 F.3d 69, 74 (3d Cir. 1996), citing Hansen v. Eagle-Pitcher Lead Co., 8 N.J. 133 (1951).  See also, e.g., Caputo v. United States, 157 F. Supp. 568, 569 (D.N.J. 1957).

8. The standard of care imposed in carrying out this duty to supervise is that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances.  Caltavuturo v. Passaic, 124 N.J. Super. 361, 366 (App. Div. 1973) (citing Dailey v. Los Angeles Unified School District, 470 P.2d 360, 363-364 (Sup. Ct. 1970)).

9. Although they can be considered when determining if a defendant has met the standard of care, safety regulations or standard operating procedures are not sufficient to impose a separate legal duty under New Jersey law.  Carvalho v. Toll Brothers and Developers, 143 N.J. 565, 574 (1996); Slack v. Whalen, 327 N.J. Super. 186 (App. Div.), cert. denied, 163 N.J. 398 (2000).

10. To prevail in a negligence action under New Jersey law, a plaintiff also must establish by a preponderance of the competent, material evidence that the defendant's conduct caused the injuries and losses for which she seeks recovery.  Causation includes both cause in fact and legal causation, often referred to as "proximate cause."  Fedorczyk, 82 F.3d at 73; Kulas v. Public Serv. Elec. and Gas Co., 41 N.J. 311, 317 (1964).

11. Causation in fact depends on whether a defendant's act or omission played a material part in bringing about the injury-producing event in question, and "[a]n act or omission is not regarded as a cause in fact of an event if the particular event would have occurred without it."  Fedorczyk, 82 F.3d at 73; see also New Jersey Dep't of Envtl. Protection v. Jersey Central

9

Power & Light Co., 69 N.J. 102, 110 (1976), and Kulas, 41 N.J. at 317.

12. The playing of running/chasing/"tag" games on jungle gym apparatus is a dangerous activity, one which should be observed and stopped by adult supervisors.

13. January Delonardo, Jamie Cullen, and Madiline Jackson complied with Standard Operating Procedure Items (b)(5), (c)(1), and (c)(5), as testified to at trial by all three adult supervisors.

14. Plaintiffs have not proven by the preponderance of the credible, material evidence that the conduct of the United States' staff employees on the playground was negligent under all of the circumstances.

15. The preponderance of the credible, material evidence demonstrates that Shacoa Chapman's jumping off over the side of the spiral slide, half-way down the spiral slide, was the cause in fact of her injury.

16. Plaintiff's have further not proven by the preponderance of the credible, material evidence, that the action or inaction of the United States' staff employees on the playground was a substantial factor in Shacoa's injury.

## V. CONCLUSION

In view of the foregoing, the Court finds that the Plaintiff has not proven, by a preponderance of the evidence, that the Defendant, through any of its agents, was negligent in supervising Shacoa on June 30, 1999. The three Program Assistants were watching approximately thirty children from different positions around the playground and jungle gym and were otherwise conducting themselves in accordance with the relevant internal standard operating procedures. Any divergence as to whether the three were, at the critical time, seated

10

together on the bench or standing at different positions is attributable, in the Court's view, to honest mis-recollection due to the age of the witness, the excitement of the moment, and the passage of time.

In addition, and alternatively, the Court finds that the Plaintiff did not prove by a preponderance of the evidence that the injury was caused by any action or inaction of the three Program Assistants. The Court finds that the injury was caused by the Plaintiff spontaneously jumping from the middle of the circular slide. It was an accident in the truest sense of the word and no one is to blame in this case.

In a perfect world, one cannot but have hoped that someone would have noticed the game of tag, stopped it, and, presumably, would have thereby prevented Shacoa from leaping from the slide. But as every parent and child care giver, at every playground, knows - one can devote every measure of attention, but accidents still happen. As the playground safety expert noted, a playground accident, in this country, occurs every two and one-half minutes.

## VI.   **VERDICT**

IT IS on this 22nd day of January, 2007,

ORDERED that there is NO CAUSE OF ACTION FOR THE PLAINTIFF and therefore, JUDGMENT IS ENTERED IN FAVOR OF THE DEFENDANT; and it is

FURTHER ORDERED that no costs be awarded.

So Ordered: _____/s/_____
Honorable John J. Hughes
United States Magistrate Judge

11